UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

VESTER JOHNSON                          CIVIL ACTION NO. 12-cv-2997

VERSUS                                  JUDGE HICKS

N. BURL CAIN                            MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

A Red River Parish jury convicted Vester Johnson ("Petitioner") of the aggravated rape of C.A., his wife's eight-year-old granddaughter.  The conviction was affirmed on direct appeal.  State v. Johnson, 2 So.3d 606 (La. App. 2d Cir. 2009), writ denied, 21 So.3d 300 (La. ).  Petitioner then pursued post-conviction applications in state court.

Petitioner filed a petition for writ of habeas corpus with this court that listed and briefed eight claims.  Petitioner soon afterward filed, with no prompting by the court, a Motion to Voluntarily Dismiss Unexhausted and Non-Federalized Claims (Doc. 6). Petitioner asked that he be allowed to voluntarily dismiss claims three, five, seven, and eight. The court issued an order (Doc. 7) that granted the motion.  After further review of the petition, the court directed the State to respond to the other four claims.  Those claims have now been briefed.  For the reasons that follow, it is recommended that the petition be denied.

**Background Facts**

The victim lived with her father and his girlfriend.  When the father came to believe that Petitioner had molested his child, the father confronted Petitioner, who struck him in the mouth.  The father, who admitted that he was afraid of Petitioner, eventually went to a police officer weeks later.  The officer interviewed the victim, as did the assistant chief of police and a social services worker.  Petitioner was charged with aggravated rape.

The victim testified at trial that Petitioner took her in a room, pulled down her pants, and licked her in her privates three times.  Another relative, R.A., was an adult at the time of trial and had two children of her own.  She testified that she had lived in the same home with Petitioner beginning about the age of six.  He had abused her on multiple occasions beginning when she was 10 or 11 years old.  The abuse stopped only when she told her mother when she was about 12, and she moved from the home to live with other relatives.  R.A. also testified about the events that happened when she was 15 that led to Petitioner's conviction in 1985, about 23 years before this trial, for carnal knowledge of a juvenile.

**Sufficiency of the Evidence**

Petitioner's first challenge is to the sufficiency of the evidence.  He was convicted of aggravated rape.  Rape is defined in La. R.S. 14:41, which provided at the relevant time that it "is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent."  Section 41(B) states that "any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime."  Section 41(C) states that oral sexual intercourse "means the

intentional engaging in any of the following acts with another person: (1) The touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender ... .”  Aggravated rape is defined in La. R.S. 14:42 and included a rape committed upon a person where the “anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim” because the victim is under the age of 13 years.

In evaluating the sufficiency of evidence to support a conviction “the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.”   Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979).   “[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.”  Cavazos v. Smith, 132 S.Ct. 2, 4 (2011).

C.A. testified that, at the time of trial, she was in the fourth grade but should have been in the fifth grade.  She said she and several of her siblings and other relatives had been gathered at Petitioner’s house for a cookout when the incident occurred years earlier.  C.A. testified that she was watching television with Petitioner while the other children were playing a game in another room.  Petitioner asked her to come with him to a back room. “And when I came in the back room he told me to pull down my pants and when I did he licked me three times in my privates.”   C.A. first said she was standing up when this happened, but then she said she thought she was lying down, then she said Petitioner had picked her up and placed her on the bed.  She said nothing like that had happened before. Tr. 266-70.

C.A. testified that Petitioner gave her a dollar and told her not to tell anyone.  She did not tell anyone until later when her grandmother (Petitioner's wife) asked her.  The prosecutor asked C.A. what she told her grandmother.  C.A. replied, "That he pulled my pants down and licked me three times."  Tr. 273.  C.A. said she also told a policeman that Petitioner "had pulled down my pants and licked me three times in my privates."  Tr. 274. She again testified that she told the assistant police chief that BB, which is the name she used for her grandfather, "had pulled down my pants and licked me three times in privates."  Tr. 275.

Coushatta Police Officer Ashanti Cole testified that he interviewed C.A., and the child told him "that her grandfather licked her three times."  Cole said he asked C.A. to show him with a baby doll "and she pointed towards the lower area of the doll, the vagina area."  Tr. 290.  Sonia Yearling, the assistant chief, testified that she also interviewed the child.  She said C.A. told her that her grandfather took her to the back room and "licked her three times." Yearling was asked, "Where did he lick her?," and she replied, "Private area, vagina."  Tr. 333-34.

The state appellate court assessed the sufficiency of the evidence on direct appeal. It discussed the Jackson standard and set forth the elements of the crime before discussing the trial evidence at length.  The appellate court found that C.A.'s testimony about the sexual contact, supported by testimony from R.A. that showed Petitioner had a lustful disposition toward children, was sufficient to establish that Petitioner engaged in oral sexual intercourse with a victim who was under the age of 13.

This claim was adjudicated on the merits in state court, so habeas corpus relief is available only if that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).  A state-court decision that rejects a sufficiency challenge is reviewed under a doubly deferential standard.  It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews,132 S.Ct. 2148, 2152 (2012); Harrell v. Cain, 595 Fed. Appx. 439 (5th Cir. 2015).

If C.A. and the prosecution witnesses were accepted as credible, then it was rational to conclude that there was no reasonable doubt as to Petitioner's guilt.  Petitioner argues that there were numerous inconsistencies in C.A.'s testimony to the point that it should not have been believed.  But such credibility determinations are squarely within the province of the trier of fact.  "[U]nder Jackson, the assessment of the credibility of the witnesses is generally beyond the scope of review."  Schlup v. Delo, 115 S.Ct. 851, 868 (1995).

Petitioner also argues that the State failed to prove penetration, which he says is a necessary element of the offense.  However, under the oral sexual intercourse provision of the statute, which was added several years before this crime, touching of the genitals using the mouth or tongue of the offender is sufficient.  The statute does not require penetration as it does with other forms of rape.

Petitioner complains that the State did not prove what the child meant by her privates, but Officer Cole testified that the child pointed to the vagina area on a doll, and Assistant Chief Yearling characterized C.A.'s statement as referencing her vagina.  Petitioner also complains that C.A. did not specifically state whether she still had panties on, but her testimony on several occasions was that Petitioner licked her privates or "in her privates," not on her underwear. There was no specific testimony regarding underwear, but the jury had ample grounds to infer from the testimony that there was no clothing between Petitioner's tongue and C.A.'s genitals.

The stakes are high in child sexual abuse cases—a natural life sentence in this case—and the case often rests on the testimony of a young and nervous victim.  That was the case here.  Even though C.A. was cross-examined by a skilled defense attorney, she was quite consistent on the most important elements of her testimony.   There were some inconsistencies, but it was the role of the jury to weigh the evidence of the various witnesses and their credibility.   They performed that role, and then the state court conscientiously applied the Jackson standard to the verdict.  It cannot be said that the state court decision was not only incorrect but was so wrong as to be an objectively unreasonable application of Jackson.  Habeas relief is not permitted on this claim.

**Mistrial Regarding Underlying Facts of Prior Conviction**

Louisiana Code of Evidence Article 412.2 allows evidence of the accused's commission of another crime involving sexually assaulted behavior to be admitted as evidence of lustful disposition toward children in the trial of a crime involving a sex offense

against a victim under 17.  Petitioner pled guilty in 1985 to carnal knowledge of a juvenile by having sexual intercourse with his then 15-year-old stepdaughter, R.A.  The State sought to use that 1985 conviction, and the issue was the subject of pretrial motions, appellate writ practice, and a hearing.  The trial court ultimately found that the 1985 conviction was admissible under state law and that he would allow some testimony about the basis of the conviction.

R.A. testified at trial that she attended a school dance when she was 15.  Petitioner and one of R.A.'s cousins came to pick her up at the dance.  Petitioner told R.A. that her mother said it was time for her to come home.  R.A. got in the car with the men.  Defense counsel twice offered to stipulate to the fact of the 1985 conviction and objected to going into the details of the crime.  The trial judge said that his ruling was that the witness could testify as to the underlying facts for the conviction, although there was a question of "where you draw the line."  The judge said the testimony would be limited but was relevant, so he allowed the witness to proceed.  Tr. 348-51.

R.A. testified that Petitioner took a turn on a road that lead away from her home.  He then turned off the road, and the car went into a ditch.  R.A. said she tried to get out of the car, but Petitioner grabbed her, choked her, put his hand over her mouth and nose, and told her to stop and be quiet.  He put her in the backseat and ordered her to take off her clothes.  R.A. took off her clothes down to her pants and underwear, and Petitioner then pulled her pants down "and proceeded to rape me."  Tr. 351-53.

Defense counsel asked that the jurors be excused, and he objected to R.A. using the word rape.  He believed it exceeded the limits on the admission of evidence of the prior conviction, and he asked for a mistrial.  The prosecutor responded that defense counsel had heard R.A.'s testimony in a prior hearing and knew how she would describe the crime, but he had not objected in advance to her using the word rape when she did so.  After lengthy argument, the judge called the jury back.  He referenced R.A. saying that Petitioner had raped her.  He admonished the jury that he was going to "strike that from the record, that word," because it was a legal conclusion, given that the Criminal Code defines rape.  He explained that Petitioner had pled guilty to carnal knowledge of a juvenile, not rape.[1]  The jury was also told to consider such testimony only for the basis of showing lustful disposition, as had been explained in a prior instruction.  R.A. returned to the stand and was asked if Petitioner had "sexual intercourse" with her when she was 15.  R.A. answered, "Yes, ma'am."  Tr. 353-69.

Petitioner argued on direct appeal that the trial court should have granted a mistrial after R.A. used the word rape in her description of the activity that led to the 1985 conviction.  The state appellate court assessed the facts in light of Louisiana evidence rules. It determined that the term rape fit the description of the crime even though Petitioner pled guilty to carnal knowledge, a consensual crime.  That, together with the judge's

---

[1] Felony carnal knowledge of a juvenile is committed when a person who is 17 or older has sexual intercourse, with consent, with a person who is 13 or older, and certain other factors are present. La. R.S. 14:80.  Thus, the 1985 conviction could have been obtained based on consensual sex between Petitioner and the 15 year old R.A.

admonishment, resulted in the trial court not erring when it denied the motion for a mistrial. State v. Johnson, 2 So.3d at 618-20.

Petitioner repeats his appellate arguments in his habeas petition but now casts them as being contrary to federal law.  Federal courts do not grant habeas relief based on mere errors in the application of state evidentiary rules or even consider it relevant whether state evidentiary rules were satisfied.  Only federal constitutional errors that satisfy the demanding standards of Section 2254 merit habeas relief.  The Due Process Clause provides a mechanism for relief when a state court wrongfully admits evidence, but only if the evidence is so unduly prejudicial that it renders the trial fundamentally unfair.  Bigby v. Cockrell, 340 F.3d 259, 271-72 (5th Cir. 2003), citing Dawson v. Delaware, 112 S. Ct. 1093 (1992) and Estelle v. McGuire, 112 S.Ct. 475 (1991).  The evidence must have had a substantial and injurious effect or influence in determining the jury's verdict.  Wood v. Quarterman, 503 F.3d 408, 414 (5th Cir. 2007).

The evidence of the prior conviction was admissible under state law, and Petitioner does not contest that point in his habeas petition.  Even if he had, courts have rejected similar claims where there was a showing that the defendant committed the prior offense and it was rationally connected to the offense charged.  Wood v. Quarterman, 503 F.3d 408, 414 (5th Cir. 2007); Wheeler v. Thaler, 347 Fed. Appx. 981, 982 (5th Cir. 2009).  Petitioner here objects only to the use of the word rape in the description.  What the witness described would amount to rape as defined by state law, even though Petitioner may have pled guilty to a different offense.  The jury was told that Petitioner had unconsensual sexual intercourse with

a 15-year-old relative, so the mere use of the word rape in addition to that evidence was not so prejudicial as to render the trial fundamentally unfair.  The trial judge also instructed the jury on more than one occasion as to the limited use of such evidence.  Habeas relief is not permitted on this claim.

**New Evidence; <u>Brady</u>**

Petitioner filed a post-conviction application in state court and alleged that the State had offered C.A.'s father (L.T.) a "deal" to testify at the trial.  Petitioner argued that he did not learn until after trial that L.T. had been ticketed for criminal charges and had been in jail, allegedly on a parole violation, but was released from custody to testify at trial.  The State responded with a copy of a summons issued to attend Mayor's Court on January 2, 2006 (a few months before Petitioner was indicted) on charges of resisting an officer, remaining after forbidden, and disturbing the peace.  The D.A. represented that the incident happened in Petitioner's front yard so it was known to him at the time of trial.  The D.A. denied that there was any deal in connection with the charges.  In support, she submitted a letter from Chief of Police Joey Miller who stated that the matter was tried through the Mayor's Court and fines of $366 were imposed on May 4, 2006.  The amounts remained due, but no bench warrant had been issued.  Tr. 1810, 1817-18.

Petitioner argued that he had gone inside after the incident at his house and was not aware of the charges against L.T.  Judge Andrew Gallagher, who was appointed to handle the post-conviction matters, ruled that he was not convinced of that and found that Petitioner knew the full events of what happened on his property.  Petitioner also had the opportunity

of open-file discovery,  the ability to run a background check on L.T., and admitted that he

had been aware that L.T. had a criminal record.  Finally, the judge found that the letter from

the police chief clarified "that there was indeed no deal between the state and [L.T.]."  Tr.

1833, 1839.  The appellate court and Supreme Court of Louisiana denied writs in summary

dispositions.

Petitioner claims that the State violated his rights under Brady v. Maryland, 83 S.Ct.

1194 (1963) when it did not disclose to the defense prior to trial the summons issued to L.T.

and his alleged deal with the State.  Brady held that "the suppression by the prosecution of

evidence favorable to an accused upon request violates due process where the evidence is

material either to guilt or to punishment, irrespective of the good faith or bad faith of the

prosecution."  Id. 83 S.Ct. at 1196-97.  The rule includes impeachment evidence as well as

exculpatory evidence.  United States v. Bagley, 105 S.Ct. 3375 (1985).

To establish a Brady claim a petitioner must establish that the evidence was (1)

suppressed, (2) favorable, and (3) material. Wright v. Quarterman, 470 F.3d 581, 591 (5th

Cir. 2006) .  Evidence is not "suppressed" if the petitioner either knew or should have known

of the essential facts that would have permitted him to take advantage of any exculpatory

evidence.  West v. Johnson, 92 F.3d 1385, 1399 (5th Cir. 1996).  Evidence is material if it

"could reasonably be taken to put the whole case in such a different light as to undermine

confidence in the verdict."  Kyles v. Whitley, 115 S.Ct. 1555, 1566 (1995).  In short, a

petitioner must show a "reasonable probability of a different result."  Banks v. Dretke, 124

S.Ct. 1256, 1276 (2004).

The state court adjudicated this claim on the merits, so habeas relief is not available unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).  The state court made a reasonable assessment of the factual record to determine that Petitioner was aware of the basic facts that L.T. had received criminal charges stemming from an incident at Petitioner's home.  The court also found that the letter from the chief of police supported the D.A.'s assertion that there was no deal between L.T. and the State.  Petitioner has offered no evidence of any such deal beyond his pure speculation in his memoranda.  The state court's assessment of these factual issues was entirely reasonable based on the record, and there was no unreasonable application of <u>Brady</u> or other clearly established federal law.

**Ineffective Assistance of Counsel**

### A.  Introduction

Petitioner argues that his trial and appellate counsel were ineffective for several reasons.  To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different.  <u>Strickland v. Washington</u>, 104 S.Ct. 2052, 2064 (1984).

### B.  Section 2254(d) Standard

Petitioner's <u>Strickland</u> claims were adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under <u>Strickland</u> was incorrect.  The question is whether that determination was unreasonable, which is a substantially higher threshold.  <u>Schriro v. Landrigan</u>, 127 S.Ct. 1933, 1939 ( 2007).

The <u>Strickland</u> standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it.  The federal court's review is thus "doubly deferential."  <u>Knowles v. Mirzayance,</u>129 S.Ct. 1411, 1420 (2009).  "If this standard is difficult to meet, that is because it was meant to be."  <u>Harrington v. Richter</u>, 131 S.Ct. 770, 786 (2011).  Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system.  <u>Id</u>.  Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  <u>Id</u>.

### C.  No Grand Jury Transcript

Petitioner was represented at trial by Taylor Townsend and Donald Kelly, both of whom have decades of experience and are well-respected trial attorneys.  Petitioner first complains that they were ineffective because they did not gain the dismissal of all charges due to the lack of a transcript of the grand jury proceedings that led to the indictment.

Petitioner states that counsel filed a motion to request a transcript of the victim's grand jury testimony.  The judge, Petitioner says, acted as though he would grant the request if there was a recording.  Petitioner states that when he obtained his attorney's file, he found

a memo from the attorney that stated he had learned from the judge that there was no recording of the grand jury testimony. Petitioner asserts, without authority, that his attorney should have then obtained the dismissal of all proceedings based on the lack of a transcript.

The state court explained that Louisiana law does not require that grand jury testimony be transcribed, and it is normal practice in Red River Parish to not record the grand jury proceedings unless specifically requested by counsel prior to the grand jury convening. Accordingly, the lack of a transcript was not grounds for dismissal, and counsel were not ineffective.  Tr. 1835.[2]  Petitioner has not cited any Louisiana law that mandates a recording of grand jury testimony or requires dismissal of a prosecution based on the lack of a transcript.  There is no merit to this claim.

### D.  No Expert

Petitioner argues that there were indications the child victim had been coached or coerced and suffered from "false memory syndrome."  He argues that counsel was ineffective for failing to obtain an independent expert to prove to the jury that the child's claims arose from this false memory syndrome. The state court responded that, assuming such an expert could even have been produced, the decision to call the expert was trial strategy within defense counsel's reasonable judgment. Tr. 1835.

---

[2] The state court addressed the issue both in the cited post-conviction ruling and in a July 14, 2011 ruling on Petitioner's motion for the transcript of the grand jury testimony. The court could not find the latter in the lengthy state court record, but it is attached to Petitioner's petition.

Petitioner has not identified an expert who could have been called on this issue, nor has he presented any evidence or even allegations concerning what the expert would have stated. Such "unsupported claims regarding the uncalled expert witness are speculative and disfavored by [the Fifth Circuit] as grounds for demonstrating ineffective assistance of counsel." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002). Petitioner must also be able to show a reasonable probability that, but for counsel not hiring such an expert, the jury would have had a reasonable doubt concerning Petitioner's guilt. Id. Petitioner cannot meet that burden based on his mere speculation that there may be such an expert out there somewhere who might have helped. Allen v. Stephens, 619 Fed. Appx. 280, 287 (5th Cir. 2015) (no prejudice shown where there was no evidence expert would have testified favorable to the defense),

### E.  Uncalled Witnesses

Petitioner complains counsel subpoenaed Chief of Police Joey Miller for trial but did not call him to testify. He similarly complains that counsel should have called as witnesses three relatives. One was Petitioner's wife (the victim's grandmother) to whom the child first reported the alleged abuse. The second is a relative who is said to have been angry at Petitioner and tried unsuccessfully to force her own child to say that Petitioner molested her. The third was Petitioner's sister, who could allegedly testify that the victim had told her that she could not recall when the molestation event happened or much else about it.

A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The petitioner must overcome the

presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  Strickland, 104 S.Ct. at 2065.  There are countless ways to provide effective assistance, and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way."  Id.

The state court took that into consideration and ruled that counsel's decisions of issues such as whether to call Chief Miller to testify are part of trial strategy, to which deference is owed.  Furthermore, Miller could only have testified about the events surrounding the arrest, which were "largely irrelevant to the greater issue."  The court did not specifically address the claims regarding the other witnesses in the same ruling.  It is not clear whether Petitioner actually presented arguments regarding those witnesses to the state court.  Perhaps they were addressed in a different ruling.  The lack of specific citations to pages in the voluminous record has made it difficult for the court to ensure that all such rulings have been found.

In any event, "complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative."  Evans, 285 F.3d at 377.  A petitioner "must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."  Day v. Quarterman, 566 F.3rd 527, 538 (5th Cir. 2009).

Petitioner did not make such a showing by affidavit or other evidence.  His claim lacks merit.  Cox v. Stephens, 602 Fed. Appx. 141, 146 (5th Cir. 2015) ("Cox has failed, through affidavits or otherwise, to demonstrate that these witnesses would have testified ...");

Gray v. Epps, 616 F.3d 436, 443 (5th Cir. 2010) (petitioner failed to show uncalled witnesses were available to testify where affidavits did not contain statement to that effect); and Evans, 285 F.3d at 377 (reversing habeas relief when no affidavits were presented from the alleged witnesses).

Petitioner has offered nothing but his speculation in his memorandum that these witnesses could have somehow helped his case.  The state court was not unreasonable in rejecting the unsupported claim.  And it is now too late for Petitioner to attempt to flesh out the claim with new evidence.  Review of a Strickland claim under Section 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011).

### F.  No In Limine Ruling Prior to Voir Dire

Months before trial, the State filed notice of its intent to use other crimes evidence in the form of Petitioner's 1985 conviction.  Counsel filed a motion in limine that sought to exclude that evidence.  On the day after jury selection began, defense counsel filed a second motion in limine that claimed the defense had become aware of indications that Petitioner had engaged in additional unadjudicated crimes (R.A.'s claims about the early abuse) that the State might attempt to introduce.  The State revealed that it had spoken with two persons, including R.A., and would call them as witnesses to testify that Petitioner engaged in inappropriate unadjudicated behavior with them when they were minors.  The trial judge held the 1985 conviction was admissible but granted the defense motion to exclude the unadjudicated acts. By the time of the rulings, the jury had been empaneled.

The State and defense applied for writs, and the appellate court granted both.  It returned the issues to the trial court for a hearing and necessary findings to properly rule on the issues.  A hearing was held, and the trial judge then determined that both the conviction and the unadjudicated acts were admissible subject to a limiting instruction.  Defense counsel applied for another writ, but it was denied.

Counsel then moved for a mistrial on the grounds that he was denied the opportunity to voir dire the jury about the 1985 conviction and the effect of the unadjudicated acts.  The trial court denied the motion, and defense counsel applied for a writ.  The appellate court denied the application and stated that the late decision on the admissibility of the prior conviction was in part attributable to the defense's failure to seek a definitive ruling before voir dire.  The court further found that whether any prejudice was caused by a lost opportunity to voir dire on the unadjudicated offenses could best be determined on appellate review with the benefit of a full record of the voir dire process.  State v. Johnson, 2 So.3d at 609-611.

Exhibit D to Petitioner's original petition is a letter from Mr. Townsend to the D.A., in which Townsend states that he will not need the voir dire transcribed if they can reach a stipulation that Petitioner did not conduct voir dire regarding other crimes evidence.  It is not clear whether such a stipulation was reached, but the voir dire was apparently not transcribed. When the issue of lack of full voir dire was raised again on direct appeal, the appellate court reviewed the history.  It noted that counsel had not asked for a ruling when the trial court asked if he wanted the court to rule on the admissibility of the prior conviction before voir

dire, and counsel had chosen not to voir dire the jury on that potential evidence.  The appellate court further noted that the record did not contain the transcript of the voir dire, and it concluded that the defense had not demonstrated abuse of discretion by the trial judge in denying the request for mistrial.  State v. Johnson, 2 So.3d at 617-18.

Petitioner argues that trial counsel was ineffective for not seeking a definitive ruling on the prior conviction before voir dire.  He raised this in his post-conviction application, and the state court rejected the argument as speculative because Petitioner failed to show how the decision not to voir dire on the other crimes evidence prejudiced the defense or prevented a fair trial with a reliable result.  With the benefit of hindsight, a case can be made that the defense may have benefitted if a pretrial ruling on the admissibility was insisted upon.  But this was a fast-moving and complicated process, with many strategic decisions to be made about which issues to press and when as the case progressed.  A reasonable attorney might have elected one course, while another may have taken a course similar to counsel in this case and chosen to avoid the sensitive other crimes evidence during jury selection, with the hope the trial or appellate court could be persuaded to disallow it before the jury learned of it.  And Petitioner has not shown a reasonable probability that the verdict would have been different had counsel insisted on that earlier ruling.  It is, as the state court said, purely speculative as to whether counsel might have even made use of the other crimes evidence when questioning prospective jurors or whether different jurors might have been selected.  For these reasons, the state court's adjudication of this claim was not an objectively unreasonable application of Strickland.

### G.  Appellate Counsel

Petitioner argues that counsel was ineffective on appeal for pursuing the appeal without having the full and complete voir dire transcript.  On appeal, effective assistance of counsel means counsel who will perform in a reasonably effective manner.  Green v. Johnson, 160 F.3d 1029, 1043 (5th Cir. 1998).  When a petitioner claims that counsel omitted an issue that should have been argued, the petitioner must show that had the issue been raised there was a reasonable probability that he would have won on appeal. Smith v. Robbins, 120 S.Ct. 746, 764 (2000); Moreno v. Dretke, 450 F.3d 158, 168 (5th Cir. 2006).  This claim is not an omitted argument claim, but the requirement of showing a reasonable probability of appellate success is nonetheless applicable.

Petitioner presented this argument in his post-conviction application.  The state court assessed the argument as speculative given the lack of a transcript, which had been offered to Petitioner a number of times if he would pay the $800 fee.  Most compelling, however, is the letter from trial counsel in which he offered to forego transcribing the voir dire if the State would simply agree that he did not conduct voir dire on the other crimes evidence issue. All that a transcript could show of relevance is a lack of voir dire on other crimes.  The courts that reviewed the issues assumed as much, yet they found relief was not available.  There is no reason to believe that the presence of a transcript would have resulted in appellate relief, so this claim lacks merit.

### H.  Child Services Worker

The state called Daphne Bonnette from the Department of Social Services.  She testified on direct that she interviewed the victim and other witnesses.  When asked for the outcome of her investigation, she said that she found it valid for sexual abuse.  Defense counsel then cross-examined her and gained concessions of dysfunction in the victim's family that included a custody battle and personal animosity, that the family rejected an offer of a psychologist or psychiatrist for the victim, and that there were no physical findings of molestation.  That final point was made by asking the witness if it was true that C.A. was seen by a physician and that the physician's report did not indicate any molestation.  Ms. Bonnette admitted she had no physical or corroborating evidence.  On redirect, the State asked again about the physician's report.  Ms. Bonnette replied that the physician "stated there was no physical evidence, but that does not mean nothing happened."  Tr. 315-25.

Petitioner argues that trial counsel was ineffective because he allowed Bonnette to offer hearsay testimony of what the physician said.  Petitioner argues that counsel should have subpoenaed the physician for trial so that she could be questioned about her report.  Petitioner contends that Bonnette's statement that it "does not mean nothing happened" was misleading to the jury.

Petitioner raised this claim in his post-conviction application.  The state court ruled that the decision whether to subpoena the physician was part of trial strategy, and it would likely not have added anything of significance if the physician had testified.  Tr. 1834-35. That was not an objectively unreasonable application of <u>Strickland</u>.  Counsel made good

points during his examination of Bonnette, and it would have been virtually impossible for him to object quickly enough to prevent the one statement about which Petitioner complains. Furthermore, the statement that the lack of physical evidence did not mean nothing happened would have been evident to any layperson, given that the allegations in this case were only a momentary oral contact rather than penetration.  Finally, Petitioner has not demonstrated that calling the physician to testify would have helped the defense.  It is extraordinarily unlikely that the physician would have testified that the lack of physical harm precluded the abuse alleged in this case, or that she could have offered anything beneficial to the defense that had not already been established.

### H.  Taking the Stand

Petitioner contends that he and his attorneys agreed before trial that he would testify, but his counsel never put him on the stand.  The final day of trial began with defense counsel stating to the court that the prosecutor had advised that she was about to rest.  Defense counsel said he had "two or three character witnesses" he would like to call.  The State formally rested, and defense counsel repeated that "We have three witnesses that were character witnesses."  There was no reference to Petitioner testifying.

After argument, the judge ruled the character witnesses could not testify and asked the defense, "Do you all have any other witnesses?"  Counsel answered, "No, judge."  That was at 10:40 a.m. in Petitioner's presence.  The court declared a recess to allow for preparation of closing arguments.  Court resumed after the lunch recess.  Defense counsel again stated, "We have no further witnesses.  Nothing further, your Honor."  Closing arguments then

began.  Tr. 379-84.  Petitioner did not make any comment, despite plentiful opportunity to do so, about not being called to testify.

Every criminal defendant has the right to testify on his own behalf.  Rock v. Arkansas, 107 S.Ct. 2704 (1987).  Appellate courts have held that the right belongs to the defendant himself and not counsel.  Emery v. Johnson, 139 F.3d 191, 198 (5th Cir. 1997).  Petitioner claims his attorneys deprived him of that right.

The state court addressed this claim on post-conviction.  It said that the decision was part of the trial strategy and that keeping Petitioner off the stand was a good strategy that avoided the State cross-examining him about past crimes.  The court noted that Petitioner could have informed the court if he wished to testify despite the reservations of his attorney. Tr. 1834.

Preventing one's client from testifying at his criminal trial constitutes deficient performance under Strickland.  United States v. Mullins, 315 F.3d 449, 453–56 (5th Cir.2002). Petitioner claims that his attorneys agreed that he would testify, yet they never prepared him for trial or put him on the stand.  But there is simply no evidence in the record to support those contentions.  The state court's rejection of this claim as conclusory is supported by the record.  See Ducros v. Cain, 471 Fed. Appx. 333, 334 (5th Cir. 2012) ("Nothing in the state record supports Ducros's assertion that he made his desire to testify known to his counsel.")  Further, the state court could have concluded that counsel reasonably dissuaded Petitioner from testifying due to the fear of cross-examination about instant and prior crimes.  Id.

Even if there were deficient performance, Petitioner would have to show prejudice. Mullins, 315 F.3d at 456-57 (not allowing the defendant to take the stand was "sound trial strategy" and not prejudicial under Strickland ); Johnson v. Cain, 712 F.3d 227, 232 n. 3 (5th Cir. 2013) ("claims involving attorney interference with [the right to testify] are subject to harmless error review"); and Preyor v. Stephens, 537 Fed. Appx. 412, 426 (5th Cir. 2013) (COA denied based on claim counsel refused to allow defendant to testify; claim was conclusory and did not show prejudice).

Petitioner has not established prejudice stemming from counsel choosing not to call Petitioner as a witness.  Petitioner suggests that he could have pointed out discrepancies in the victim's testimony, explained his side of the 1985 conviction, and pointed out that he had not been charged with other crimes. Those points might have been of some help to the defense, but they would have also opened the door to potentially devastating cross-examination about the details of the instant and past crimes. There is no reasonable basis to believe that the verdict would have been different if counsel had called Petitioner to the stand, so no prejudice has been shown.  Relief is not available on this final claim.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus be denied.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and

recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 26th day of January, 2016.

Mark L. Hornsby
U.S. Magistrate Judge